**United States Court of Appeals**
**Fifth Circuit**

**F I L E D**

**December 12, 2005**

Charles R. Fulbruge III
Clerk

**UNITED STATES COURT OF APPEALS**

**FIFTH CIRCUIT**

————————

No. 04-61033

(Summary Calendar)

————————

GURPREET SINGH,

Petitioner,

versus

ALBERTO R. GONZALES, U S ATTORNEY GENERAL,

Respondent.

Petition for Review of an Order of the
Board of Immigration Appeals
No. A78 125 407

Before SMITH, GARZA and PRADO, Circuit Judges.

PER CURIAM:[*]

Gurpreet Singh ("Singh") petitions for review of the denial of asylum by the Board of

Immigration Appeals ("BIA").

—————————————

[*]        Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not
be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R.
47.5.4.

I

Singh, a native of India and a resident of the state of Punjab, entered the United States as a stowaway in 2003.  Following a credible fear interview, Singh applied for asylum.

Singh attested that he and his father formally joined the Akali Dal Mann Party in 1999, though his family, as Sikhs, was active in the party prior to this time.  Indeed, Singh testified that his father was arrested on false murder charges in 1996 because he refused to join the rival Congress Party.  The charge was eventually dropped.  Once a formal member of the Party, Singh helped at Party functions by providing security, assisting with meal service, and distributing information to other members.  The Congress Party came to power within the state of Punjab in 2002.  Singh stated that during a state election in that year a group of fifteen to twenty Congress Party members attacked and beat him while he was preparing to vote.  He further testified that the police, while present at the attack, did not help him because they were Congress Party sympathizers.  He was not hospitalized but recuperated at home and then hid with various family members, ultimately traveling to Bombay as the beginning leg of his journey to the United States.  Singh asserted that he was not safe in Bombay (a city in the state of Maharashtra) because he was from Punjab and thus identifiable as an outsider even within the Sikh community.  Moreover, as an arrival from another district, he would have had to register with the government, which was by then controlled by the Congress Party.  He would remain subject to persecution because the Congress Party in Bombay, knowing he was a Sikh from Punjab, would be able to identify him as a member of the Akali Dal Mann Party.

The Immigration Judge ("IJ") found Singh to be a credible witness and granted asylum.  The IJ determined that Singh had a well-founded fear of persecution, based on his political affiliations, and

had demonstrated that he could not relocate safely within India because of the ascendency of the Congress Party to national power. The BIA reversed in a short opinion, observing that Singh had not suffered past harm rising to the level of persecution and ultimately concluding that Singh had not "sustain[ed] his burden of proving that relocation within India would be unreasonable." Singh moved for a stay of deportation pending review of the BIA's decision, which we denied.

II

Singh argues on appeal that the BIA's determination that he lacked a well-founded fear of persecution and could have reasonably relocated within India was not based on substantial evidence. He further argues that the brevity of the BIA's opinion suggests that the BIA did not adequately consider the relevant evidence submitted to the IJ. *See Abdel-Masieh v. INS*, 73 F.3d 579, 586 (5th Cir. 1996) ("While we do not require that the BIA address evidentiary minutiae or write any lengthy exegesis, its decision must reflect meaningful consideration of the relevant substantial evidence supporting the alien's claims.") (internal citations omitted). We review only the order of the BIA. *Adebisi v. INS*, 952 F.2d 910, 912 (5th Cir. 1992). We will reverse if the BIA's decision was unsupported by substantial evidence in the record. *Faddoul v. INS*. 37 F.3d 185, 188 (5th Cir. 1994).

"An applicant [for asylum] does not have a well-founded fear of persecution if the applicant could avoid persecution by relocating to another part of the applicant's country of nationality." 8 C.F.R. § 1208.13(b)(2)(ii); *see also Lopez-Gomez v. Ashcroft*, 263 F.3d 442, 446 (5th Cir. 2001) ("[W]hen a person can relocate within his country upon return, the extraordinary act of granting asylum is not necessary."). As discussed above, Singh asserts that should he relocate, he would be identifiable as a Punjabi Sikh not only because of his accent and other distinguishing characteristics, but also because he would be required to register with district officials. He concludes that the

Congress Party, which has both national and local power, would thus be able to identify him as a member of the Akali Dal Mann Party and would subject him to future persecution. The State Department's Comments on Country Conditions and Asylum Claims, in discussing asylum claims by Punjabi Sikhs, states:

> It is usually possible for a Sikh to resettle elsewhere in India. It is true that a Punjabi Sikh is identifiable both by appearance and by speech pattern, but unless the authorities have evidence of criminal activities they do not pursue individual Sikhs outside the Punjab. The four million Sikhs who live outside the Punjab lead tranquil and productive lives. The fact that there are virtually no Sikh asylum applicants from outside the Punjab and its immediate environs indicates that Sikhs can and do live elsewhere without any difficulty.

This analysis, as well as Singh's testimony, was before the BIA when it made its decision. We have no reason to doubt that it considered the relevant evidence.

When considering a claim that an individual would be subject to persecution through out the whole country, and not just in one locality, we have stated that "[w]hen a party seeking asylum demonstrates that a national government is the 'persecutor,' the burden should fall upon the INS to show that this government's persecutive actions are truly limited to a clearly delineated and limited locality and situation." *Abdel-Masieh*, 73 F.3d at 587. Here, however, Singh has not offered more than speculative assertions that the national Congress Party or local factions of that Party would seek him out for persecution, and he has not provided any other reason as to why he cannot move to another district. We will reverse the BIA "only if the evidence presented by [petitioner] was such that a reasonable factfinder would have to conclude that the requisite fear of persecution existed." *INS v. Elias-Zacarias*, 502 U.S. 478, 481 (1992). Singh has not provided evidence that would compel us to determine that he cannot relocate within India.

The petition for review of the BIA's decision is accordingly DENIED.